No. 87-467

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

RONALD J. BREWER,

         Plaintiff and Appellant,

   -vs-

SKI-LIFT, INC., a Montana corporation,

         Defendant and Respondent.

_____

APPEAL FROM: District Court of the Fourteenth Judicial District,
In and for the County of Meagher,
The Honorable Roy Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Allan M. McGarvey; McGarvey, Heberling, Sullivan and
McGarvey, Kalispell, Montana

    For Respondent:

        Norman L. Newhall, III; Linnell, Newhall and Martin,
Great Falls, Montana

_____

Submitted:   May 24, 1988

Decided:   September 26, 1988

Filed: SEP 2 6 1988

_____

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiff, Ronald Brewer (Brewer), appeals a summary judgment granted in favor of defendant, Ski-Lift, Inc. (Ski-Lift), on October 14, 1987, in the Fourteenth Judicial District, Meagher County, Montana. We reverse and remand.

On December 26, 1983, plaintiff Brewer suffered an injury while skiing at "Showdown," a recreational ski area owned by Ski-Lift, a Montana corporation. Brewer contends his injury was caused by the negligence of the ski area operator. Brewer was skiing through powder snow when one ski came off and he fell. He claims his fall was an intentional response after he realized he had lost one ski. Upon falling, Brewer sustained injuries which he contends include fractured ribs, an aggravated degenerative back condition and a hemopneumothorax of the right lung. Brewer states his injuries resulted because he fell on a tree stump which was just beneath the snow and not visible. He contends the stump was removed from its natural position in the course of ski hill maintenance and placed in a dangerous location. Further, he contends the stump was turned upside down with sharp roots sticking upward and that proper maintenance would have eliminated such a hazard.

Following discovery proceedings, Ski-Lift filed a motion for summary judgment and the motion was granted October 14, 1987. The District Court concluded the judgment would favor defendant Ski-Lift even if Brewer's facts were assumed to be true. The District Court reasoned that the circumstances of the accident, as related by Brewer, were controlled by the "Skier Responsibility" statutes. Sections 23-2-731 to -737, MCA. The District Court noted that, by statute, a skier is barred from recovery from a ski area operator if the skier suffers any injury as a result of "any

risk inherent in the sport of skiing . . . " Section 23-2-737, MCA. Relying on § 23-2-736, MCA, the District Court stated such risks include:

> a. Variations in terrain, surface or subsurface snow conditions, rocks, trees and other forms of forest growth or debris.
>
> b. Maintenance of the skier's control of speed and course at all times while skiing.
>
> c. Collisions with an object while skiing.

The District Court held that assuming all of Brewer's facts were true, the injury resulted from risks inherent in the sport of skiing. Therefore, no genuine issue as to any material fact existed and defendant Ski-Lift was entitled to summary judgment.

Three questions are raised for our consideration on appeal:

1. Do the Montana "Skier Responsibility" statutes violate constitutional guarantees of equal protection?

2. Are the Montana "Skier Responsibility" statutes unconstitutionally vague?

3. Assuming the Montana "Skier Responsibility" statutes are held constitutional, did the District Court properly grant summary judgment in favor of defendant?

> Issue 1: Do the Montana "Skier Responsibility" statutes violate constitutional guarantees of equal protection?

Brewer contends that the skier responsibility statutes, §§ 23-2-731 to -737, directly conflict with Article II, Sec. 16 of the Montana Constitution, guaranteeing the right to full legal redress. Brewer primarily attacks § 23-2-736, MCA, and asserts that, without any showing of a compelling state interest, the statute denies a person's fundamental

3

right to full legal redress and cites Pfost v. State (Mont. 1985), 713 P.2d 495, 42 St.Rep. 1957; and, White v. State (1983), 203 Mont. 363, 661 P.2d 1272. Plaintiff also relies on Madison v. Yunker (1978), 180 Mont. 54, 589 P.2d 126 (holding a liable statute unconstitutional because it effectively failed to provide a sufficient remedy); and, Corrigan v. Janney (Mont. 1981), 626 P.2d 838, 38 St.Rep. 545 (holding that it would be unconstitutional "to deny a tenant all causes of action . . . arising out of the negligent management of rental premises by a landlord"). The crux of Brewer's argument is that the skier responsibility statutes absolve a ski area operator from all liability, even if a ski injury is caused by the operator's negligent or reckless behavior.

Ski-Lift responds that although the State Constitution guarantees a right to full legal redress, the Legislature retains the power to define the scope and extent of that right. Significantly, Ski-Lift maintains that the skier responsibility statutes do not leave Brewer without a remedy for acts of negligence by the operator. In making this argument Ski-Lift relies on § 23-2-731, MCA, which states, in part, "[t]hat there are inherent risks in the sport of skiing that are essentially impossible to eliminate by the ski area operator but that should be known by the skier." Ski-Lift contends that this statement of purpose creates a situation where the skier only assumes "risks inherent in the sport of skiing." This argument is made despite the fact that § 23-2-736(1), MCA, specifically requires that a skier assume "the risk and all legal responsibility for injury to himself or loss of property that results from participating in the sport of skiing by virtue of his participation."

Although Brewer initially frames this issue by alleging an unconstitutional restriction on his right to full legal redress, here the court denied him any redress. Both parties

4

also address the equal protection aspects of the skier responsibility statutes. This case is not a denial of full legal redress, but rather a case of denial of any redress and therefore appropriately decided on the constitutional basis of denial of equal protection. Therefore, we choose to begin our analysis on this basis. The constitutional guarantee of equal protection requires that all persons be treated alike under like circumstances. Amend. XIV, § 1, U.S. Const.; and Art.II, Sec. 4., Mont.Const. The foundation of this discussion relates to the fact that the statutes classify skiers and treat them differently than those who engage in other sports activities which are inherently dangerous. The statutes require skiers alone to assume the risk of injury. Additionally, the statutes classify ski area operators in their own class, and allow them certain rights not enjoyed by other recreational businesses.

In considering the constitutionality of the skier responsibility statutes, we must begin by presuming that the statutes are constitutional. It has long been the general rule of this Court that statutes carry a presumption of constitutionality. See, e.g. Goodover v. Department of Administration (1982), 201 Mont. 92, 95-96, 651 P.2d 1005, 1007. Generally, "whenever there are differing possible interpretations of [a] statute, a constitutional interpretation is favored over one that is not." Department of State Lands v. Pettibone (Mont. 1985), 702 P.2d 948, 956, 42 St.Rep. 869, 878.

Professor Lawrence H. Tribe, in his treatise American Constitutional Law, (2nd. Ed.), page 1440 speaking on "equal protection" notes:

> [T]o provide content, equal protection came to be seen as requiring "some rationality in the nature of the class singled out," with "rationality" tested by the classification's ability to serve the purposes intended by the legislative

5

or administrative rule: "The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose . . . "

Citing, McLaughlin v. Florida (1964), 379 U.S. 184, 191, 85 S.Ct. 283, 288, 13 L.Ed.2d 222, 228.

At page 1441 Professor Tribe refers to two Supreme Court cases, Zobel v. Williams (1982), 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672, and Hooper v. Bernalillo County Assessor (1985), 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487. These two cases involved an irrational distinction made between state residents -- the first being for the payment of monies to Alaska residents and the second to the New Mexico tax exemption for those who had served in the Vietnam War and who moved to New Mexico by a specified date. The rationale of those cases is appropriate here.

In Hooper, the Court speaking through Chief Justice Burger, stated a good general rule:

> When a state distributes benefits unequally, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment. Generally, a law will survive that scrutiny if the distinction rationally furthers a legitimate state purpose. . . [a]s in Zobel, if the statutory scheme cannot pass even the minimum rationality test, our inquiry ends.

Hooper, 472 U.S. at 618, 105 S.Ct. at 2866, 86 L.Ed.2d at 493.

Our initial aim is to analyze the purpose of the skier responsibility statutes with the above constitutional principles in mind. In enacting the statutes the Legislature offered a specific statement of purpose:

> It is recognized that there are inherent risks in the sport of skiing that are essentially impossible to eliminate by

6

the ski area operator but that should be known by the skier. It is the purpose of 23-2-731 through 23-2-737 to define those areas of responsibility and affirmative acts for which the ski area operator is liable for loss, damage, or injury and those risks for which the skier expressly assumes or shall be considered to have voluntarily assumed the risk of loss or damage and for which there can be no recovery.

Section 23-2-731, MCA. In general the purpose was to more specifically define the standards of care and duty to be observed by both the skier and the ski area operator. Such a purpose is certainly legitimate and is a proper area for legislation.

There is a legitimate state interest in protecting the ski industry from frivolous lawsuits and liability over which the operator has no control. This leads us to the analysis of the troublesome portion of the skier responsibility statutes. Sections 23-2-736 and 23-2-737, MCA.

23-2-736. Skier's assumption of responsibility -- duties. (1) A skier assumes the risk and all legal responsibility for injury to himself or loss of property that results from participating in the sport of skiing by virtue of his participation. The assumption of risk and responsibility includes but is not limited to injury or loss caused by the following: variations in terrain, surface or subsurface snow or ice conditions, bare spots, rocks, trees, other forms of forest growth or debris, lift towers and components thereof, pole lines, and plainly marked or visible snowmaking equipment.

(2) A skier is responsible for knowing the range of his own ability to ski any slope, trail, or area and for skiing within the limits of his ability, skiing only on designated slopes and trails,

7

maintaining control of speed and course at all times while skiing, heeding all posted warnings, and refraining from acting in a manner that may cause or contribute to the injury of anyone. The responsibility for collisions with a person or object while skiing is the responsibility of the person or persons and not the responsibility of the ski area operator.

(3) A person who is skiing may not place an object in the ski area or on the uphill track of a passenger tramway that may cause a passenger or skier to fall, cross the track of a passenger tramway except at a designated and approved area, or if involved in a skiing accident, depart from the scene of the accident without leaving personal identification before notifying the proper authorities or obtaining assistance when the skier knows that a person involved in the accident is in need of medical or other assistance.

23-2-737. Effect of comparative negligence. Notwithstanding any comparative negligence law in this state, a person is barred from recovery from a ski area operator for loss or damage resulting from any risk inherent in the sport of skiing as described in 23-2-736. (Emphasis added.)

In substance the underscored portions provide that a skier assumes the risk and all legal responsibility for injury to himself that results from participating in skiing; and that the responsibility for collisions with an object is the responsibility of the skier and not the responsibility of the ski area operator; and finally that notwithstanding the comparative negligence law of Montana, a skier is barred from recovery from a ski area operator for loss from any risk inherent in the sport of skiing, thereby eliminating the theory of comparative negligence. A fair reading of the underlined portions of the above statutes prohibits the skier

from obtaining legal recourse against an operator even if the injury is proximately caused by the negligent or even intentional actions of the operator.

Counsel for Ski-Lift urges us to interpret § 23-2-736, MCA, in light of the purposes stated in § 23-2-731, MCA, and to thereby conclude that a skier does not assume the risk of operator negligence because that is not a risk inherent in the sport of skiing. We are unable to reach that conclusion after a careful review of the above underscored language in §§ 23-2-736 and 23-2-737, MCA.

Although the state has a legitimate interest in protecting the economic vitality of the ski industry, there is no rational relationship between this purpose and requiring that skiers assume all risks for injuries regardless of the cause and regardless of the presence of negligence or intentional conduct on the part of the ski area operator. As we read the above underscored portions of §§ 23-2-736 and 23-2-737, MCA, we conclude that these portions of the statutes are needlessly over broad and clearly go far beyond the stated purposes of the statutes as set forth in § 23-2-731, MCA. Applying the test referred to in Hooper, we conclude that the underscored portions of these two statutes cannot pass even a minimum rationality test. These provisions are not related to inherent risks in the sport of skiing which are essentially impossible to eliminate by the ski area operator as stated in § 23-2-731, MCA. We conclude that these provisions fail to pass the minimum rationality test for the following reasons: there is nothing in the legislation to suggest a reason to require that a skier assumes the risk and legal responsibility for injury to himself and for collisions and that there is no responsibility on the part of the ski area operator. Such provisions eliminate any theory of negligence on the part of the ski area operator. This contradicts § 27-1-701, MCA,

9

under which a person is responsible for an injury resulting from his want of ordinary care. In a similar manner, the underscored portion of § 23-2-737, MCA, fails to meet the minimum rationality test in providing that notwithstanding the comparative negligence law of Montana, a person is barred from recovery from a ski area operator for loss from any risk inherent in the sport of skiing. In effect this appears to be an attempt to go back to the old law of negligence which provided in Montana that a person who was in any way contributorially negligent was barred from recovery. Again there is a total absence of a minimum rational basis for concluding that such a provision is required in connection with skiing when such an activity is compared with the various other activities which in themselves are also to be classed as inherently dangerous, but in which the comparative negligence laws are held to apply.

We therefore conclude that the above quoted sections of § 23-2-736(1), MCA, and § 23-2-737, MCA, violate the constitutional guarantee of equal protection and we accordingly hold them invalid, such invalid provisions being as follows:

> 23-2-736. Skier's assumption of responsibility -- duties. (1) A skier assumes the risk and all legal responsibility for injury to himself or loss of property that results from participating in the sport of skiing by virtue of his participation. . .
>
> (2) [T]he responsibility for collisions with a person or object while skiing is the responsibility of the person or persons and not the responsibility of the ski area operator. . .
>
> 23-2-737. Effect of comparative negligence. Notwithstanding any comparative negligence law in this state, a person is barred from recovery from a ski area operator for loss or damage

10

resulting from any risk inherent in the
sport of skiing as described in 23-2-736.

By way of suggestion and for the purpose of guiding the District Court, the following statement could be implemented as a jury instruction in this case as a replacement for the now invalid first sentence of § 23-2-736(1), MCA:

> A skier assumes the risk and all legal responsibility for injury to himself or loss of property resulting from the inherent risks in the sport of skiing that are essentially impossible to eliminate by the ski area operator.

This statement is in conformity with the stated purpose of the skier responsibility statutes and would not require all skiers to assume all risks no matter what the cause. At the same time, it would seem to accomplish the intent of the statutes. Further, we invite the Legislature to reconsider these statutes and enact appropriate additions or changes which are in conformity with this opinion.

In view of our determination of this first issue, we need not determine the remaining two issues. Here the statutory scheme fails to pass the minimum rationality test. We reverse and remand to the District Court for further considerations of defendant's motion for summary judgment in accordance with this opinion.

_____
Justice

We concur:

_____

_____

_____
Justices

11

_____
Honorable Jack L. Green,
District Judge, sitting for
Mr. Chief Justice J.A. Turnage

_____
Honorable Ted L. Mizner,
District Judge, sitting for
Mr. Justice L. C. Gulbrandson

Mr. Justice R.C. McDonough dissents as follows:


A statute might be unfair but not unconstitutional. Our "skier responsibility" statute, § 23-2-736, MCA, does not violate the constitutional guarantee of equal protection.

The majority opinion points out the statute classifies skiers separately and treats them differently than those who are engaged in other sports activities which are inherently dangerous, and places the ski area operators in a separate class and allows them certain rights not enjoyed by other recreational businesses. The equal protection question becomes, then, does the statute have some rational basis in fact and bear a rational relationship to legitimate state objects? Or, are the skiers being treated differently on a basis of a criteria wholly unrelated in a rational way to the objectives of the statute?

The objective of § 23-2-736, MCA, is to define the duties and responsibilities of the skier and the ski area operator because of the inherent risks in the sport of skiing. Statutes in this part also define the responsibility of the ski lift operators and of the lift passengers. Would anyone challenge the rationality of such provisions or of provisions governing roller coasters and passengers? Risk distinctions between sports exist, and rational choices based on the perceived distinctions are made everyday. Sky diving and bull riding are to some people considered dangerous, while football is not. The legislature should be free to recognize the degrees of such risk and impose duties and obligations where needed.

The classification here is proper because it includes all who possess the characteristics or attributes which are the basis of the classification. Skier's differences from

those excluded (such as sky divers and bull riders) are substantial and are related to the purpose of this legislation.

Legitimate purposes and objectives here are safety, prevention of frivolous lawsuits, and reduction of liability of the ski area operators because of the uncertain potentially great ski area operator's liability. These reasons are valid as a basis for the classification. See Pizza v. Wolf Creek Ski Development Corp. (Colo. 1985), 711 P.2d 671; Grieb v. Alpine Valley Ski Area, Inc. (Mich. App. 1986), 400 N.W.2d 633.

The majority essentially does not agree with the legislature as to some of the delineated duties and responsibilities. This is not a basis for violation of the equal protection clause.

The proposed instruction of the majority, under their reasoning, would violate the equal protection clause by shifting the burden of responsibility to the ski area operator for all risks that are not essentially impossible for him to eliminate. It substitutes the Court's judgment for that of the legislature in violation of § 1-1-108, MCA.

I concur, however, with the majority as to the unconstitutionality of § 23-2-737, MCA, "Effect of comparative negligence", but for another reason. It clearly violates Section 12, Article V of the 1972 Montana Constitution, which provides as follows: "the Legislature shall not pass a special or local act when a general act is, or can be made, applicable." This is a special act under these circumstances and the general comparative negligence act is applicable.

_____
Justice