KIESEL INTERCOUNTY DRAIN DRAINAGE DISTRICT v DEPARTMENT
OF NATURAL RESOURCES

Docket No. 193498. Submitted October 15, 1997, at Lansing. Decided January 16, 1998, at 9:00 A.M. Leave to appeal denied, 457 Mich ___.

The Kiesel Intercounty Drain Drainage District brought an action in the Midland Circuit Court against the Department of Natural Resources, seeking a declaration that any activities undertaken in the completion of the portion of the Kiesel Intercounty Drain that was located in Midland County were exempt from the permit requirements of the now-repealed Inland Lakes and Streams Act (ILSA), MCL 281.951 et seq.; MSA 11.475(1) et seq., and the now-repealed Wetland Protection Act (WPA), MCL 281.701 et seq.; MSA 18.595(51) et seq. Each party filed a motion for summary disposition. The court, Paul J. Clulo, J., denied summary disposition for the plaintiff and granted summary disposition for the defendant, holding that because an extension of a drain was involved, the plaintiff had to obtain the permits required by the ILSA and the WPA. The plaintiff moved for reconsideration. The court, relying on Attorney General ex rel Dep't of Natural Resources v Huron Co Rd Comm, 212 Mich App 510 (1995), set aside its prior order, denied summary disposition for the defendant, and granted summary disposition for the plaintiff, holding that because the drainage project was a maintenance and improvement project designed to provide drainage to farmlands, to restore a watercourse, and to alleviate flooding, it was exempt from the permit requirements of the ILSA and the WPA. The defendant appealed.

The Court of Appeals held:

1. Both the ILSA, with its regulatory scheme to limit construction and other activities that may adversely affect Michigan lakes and waterways, and the WPA, with its primary purpose to ensure that wetland habitats are preserved and protected, require that a person who engages in certain activities defined under the respective acts obtain a permit from the DNR before engaging in those acts.

2. Section 4(g) of the ILSA, MCL 281.954(g); MSA 11.475(4)(g), exempts from the ILSA permit requirement the "[m]aintenance and improvement of all drains legally established or constructed prior to January 1, 1973." Section 6(2)(h)(ii) of the WPA, MCL

281.706(2)(h)(ii); MSA 18.595(56)(2)(h)(ii), exempts from the WPA permit requirement the "[m]aintenance, operation, or improvement which includes straightening, widening, or deepening" of that portion of a legally established drain that was constructed or improved for drainage purposes where the maintenance, operation, or improvement is necessary for the production or harvesting of agricultural products. The DNR has maintained throughout this litigation that the terms "maintenance" and "improvement" do not encompass an extension to an existing drain such as is involved in this case.

3. Although the decision of this Court in *Attorney General v Huron Co Rd Comm, supra,* was nullified by the Supreme Court, 451 Mich 909 (1996), the conclusion of the panel in that case that an extension of an existing drain was encompassed within the "maintenance, . . . or improvement" language of § 6(2)(h)(ii) of the WPA is a reasonable construction of the language in the WPA. However, the *Huron Co* panel's construction of the similar "maintenance and improvement" exception in § 4(g) of the ILSA failed to take into account the language of § 3(d) of the ILSA, MCL 281.953(d); MSA 11.475(3)(d), which requires that a person who intends to "[c]reate, enlarge or diminish an inland lake or stream" obtain a permit from the DNR. There is no dispute that the Kiesel Intercounty Drain is an inland lake or stream within the meaning of the ILSA. Because the term "enlarge" encompasses within its meaning an extension of an existing drain, a holding that the "maintenance and improvement" exception in § 4(g) of the ILSA includes within its meaning an extension of an existing drain would render nugatory the requirement of § 3(d) of the ILSA that a person must obtain a permit before enlarging an inland lake or stream. Accordingly, the trial court erred in holding that the plaintiff's planned extension of the Kiesel Intercounty Drain was exempt from the permit requirement of the ILSA.

4. Because the plaintiff is required to seek a permit under the ILSA in order to proceed with the extension of the Kiesel Intercounty Drain, it is unnecessary to address the issue whether the plaintiff is also required to seek a permit under the WPA.

Reversed.

DRAINS — MAINTENANCE AND IMPROVEMENT — INLAND LAKES AND STREAMS ACT — PERMITS.

A permit under the now-repealed Inland Lakes and Streams Act is required for the extension of a drain, even if the drain was legally established or constructed before January 1, 1973 (former MCL 281.953[d], 281.954[g]; MSA 11.475[3][d], 11.475[4][g]).

*Hubbard, Fox, Thomas, White & Bengtson, P.C.* (by *Geoffrey H. Seidlein*), for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *A. Michael Leffler* and *Stephen M. Rideout*, Assistant Attorneys General, for the defendant.

Before: YOUNG, P.J., and MARKMAN and SMOLENSKI, JJ.

YOUNG, P.J. In this declaratory action, defendant, the Department of Natural Resources (DNR), appeals as of right the order granting summary disposition in plaintiff's favor pursuant to MCR 2.116(C)(10). The issue presented in this appeal is whether DNR permits are required before plaintiff may complete a drain project in the Midland County portion of the Kiesel Intercounty Drain Drainage District. The trial court concluded that the project was exempt from the permit requirements contained in the now-repealed Inland Lakes and Streams Act (ILSA), MCL 281.951 *et seq.*; MSA 11.475(1) *et seq.*, and the now-repealed Wetland Protection Act (WPA), MCL 281.701 *et seq.*; MSA 18.595(51) *et seq.*[1] We reverse.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In 1969, the Bay and Midland County drain commissioners and the Michigan Department of Agriculture

---

[1] The ILSA and the WPA were repealed by 1995 PA 59, effective May 24, 1995. The provisions of the former ILSA are now contained in Article III, Part 301 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.30101 *et seq.*; MSA 13A.30101 *et seq.*, and the provisions of the former WPA are now contained in Article III, Part 303 of the NREPA, MCL 324.30301 *et seq.*; MSA 13A.30301 *et seq.* Although the former ILSA and WPA were in effect at the time the DNR originally required plaintiff to obtain permits, the substance of the repealed language that is relevant in this case is identical to that contained in the current NREPA.

entered an order establishing the Kiesel Intercounty
Drain Drainage District, which encompasses approxi-
mately six square miles in Bay and Midland Counties
and includes privately dug drains and natural drain-
age systems. The drainage district is comprised of
three sections: the lower portion and the middle por-
tion, which are located in Bay County, and the upper
portion, the subject of the dispute in this case, which
would allow the drain to continue into Midland
County. In 1971, the Department of Agriculture
entered orders of necessity and determination for
locating, establishing, and constructing the portion of
the Kiesel Drain located in Bay County, but the work
was never completed. In 1976, Midland County land-
owners petitioned for completion of the Midland
County, or upper portion of the drain. The Kiesel
Intercounty Drain Drainage Board approved the
project.

All progress on the Kiesel Drain eventually ceased
in 1978 when several Midland County landowners
filed an action challenging the completion of the
upper portion of the drain. The Midland Circuit Court
found no cause of action. Thereafter, plaintiff solic-
ited bids and entered into contracts for the construc-
tion of all three portions of the drain. Construction of
the lower and middle portions of the drain was com-
pleted, and, in 1990, plaintiff secured the necessary
rights of way to complete the upper portion of the
drain. However, the DNR informed plaintiff that it
would have to obtain a wetlands permit, pursuant to
the WPA, to complete the Midland County portion of
the project. In 1992, the Department of Agriculture
informed plaintiff that the proposed project was also
subject to the permit requirements of the ILSA.

In March 1993, plaintiff submitted an application for a scaled-down version of the project. Plaintiff filed the instant lawsuit after the DNR denied plaintiff's application. The complaint sought a declaration that the drainage project was exempt from the permit requirements of the ILSA and the WPA. Following the parties' cross-motions for summary disposition, the trial court granted summary disposition to the DNR. The court held that, because the proposed project was an extension of the Kiesel Drain, plaintiff had to obtain the necessary ILSA and WPA permits. Plaintiff moved for reconsideration. Relying on *Attorney General ex rel Dep't of Natural Resources v Huron Co Rd Comm*, 212 Mich App 510; 538 NW2d 68 (1995), before it was nullified by the Supreme Court, 451 Mich 909 (1996), the trial court reversed its prior holding and granted summary disposition to plaintiff. The court determined that because the drainage project was a maintenance and improvement project designed to provide drainage to farmlands, restore the watercourse, and alleviate flooding, it was therefore exempt from the ILSA and WPA permit requirements.

## II. ANALYSIS

While the trial court decided this case under MCR 2.116(C)(10), the central issue on appeal is the construction of the relevant ILSA and WPA provisions. We review de novo questions of law involving statutory interpretation. *In re Lafayette Towers*, 200 Mich App 269, 272-273; 503 NW2d 740 (1993).

### A. THE ILSA AND WPA PERMIT EXCEPTIONS

The ILSA establishes a regulatory scheme that limits construction and other activities that may adversely

affect Michigan lakes and waterways. *Attorney General ex rel Dep't of Natural Resources v Sanilac Co Drain Comm'r*, 173 Mich App 526, 530; 434 NW2d 181 (1988). The DNR must issue a permit before a person may undertake any construction outlined in the act. *Id.* Similarly, the primary purpose of the WPA is to ensure that wetland habitats are preserved and protected. *Harkins v Dep't of Natural Resources*, 206 Mich App 317, 321; 520 NW2d 653 (1994). As with the ILSA, the WPA requires that the DNR issue a permit before a person engages in activities defined under the act that affect a wetland. *Id.*

However, both the ILSA and the WPA provide for various exemptions from their permit requirements. The ILSA exemption at issue in this case is provided in § 4(g) of the act, MCL 281.954(g); MSA 11.475(4)(g):

> A permit shall *not* be required for:
>
> *          *          *
>
> (g) *Maintenance* and *improvement* of all drains legally established or constructed prior to January 1, 1973 . . . . [Emphasis added.][2]

The relevant and similar WPA exemption is provided in § 6(2)(h)(ii) of the act, MCL 281.706(2)(h)(ii); MSA 18.595(56)(2)(h)(ii):

> The following uses shall be allowed in a wetland *without* a permit subject to other laws of this state and the owner's regulation:
>
> *          *          *

---

[2] This language is currently found in MCL 324.30103(g); MSA 13A.30103(g).

(h) *Maintenance*, operation, or *improvement* which includes straightening, widening, or deepening of the following which is necessary for the production or harvesting of agricultural products:

\*          \*          \*

(ii) That portion of a drain legally established pursuant to the drain code of 1956 . . . which has been constructed or improved for drainage purposes. [Emphasis added.][3]

### B. CONSTRUCTION OF THE ILSA AND WPA PERMIT EXEMPTIONS

As noted, this dispute concerns how broadly the permit exemptions in the ILSA and the WPA may be construed. The DNR has maintained throughout this litigation that the terms "maintenance" and "improvement" found in the exemptions of both the ILSA and the WPA do not encompass the *extension* of an existing drain, but merely the enhancement of an existing drain. Consequently, because plaintiff seeks to extend the existing drain into Midland County, the DNR argues that plaintiff must secure permits. By contrast, plaintiff has argued that these terms properly must be read to include the extension of a drain, such that a drain extension project, like the one at issue here, is exempt from the permit requirements of the ILSA and the WPA.

The fundamental rule of statutory construction is to give meaning to the Legislature's intent in enacting a provision. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). The first criterion in determining intent is the specific language of the statute. *House Speaker v State Administrative*

---

[3] This language is currently found in MCL 324.30305(2)(h)(ii); MSA 13A.30305(2)(h)(ii).

*Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. *Barr v Mt Brighton, Inc*, 215 Mich App 512, 516-517; 546 NW2d 273 (1996). However, if reasonable minds can differ concerning the meaning of a statute, judicial construction is appropriate. *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996). To discover legislative intent, statutory provisions should be read in context to provide, if possible, an harmonious and consistent enactment as a whole. *Weems v Chrysler Corp*, 448 Mich 679, 699-700; 533 NW2d 287 (1995). Statutory language should be construed reasonably, keeping in mind the purpose of the statute. *Lorencz v Ford Motor Co*, 439 Mich 370, 377; 483 NW2d 844 (1992).

In reaching its decision, the trial court relied on this Court's decision in *Huron Co, supra*, in which a panel of this Court interpreted the same ILSA and WPA exemptions at issue in this appeal. In *Huron Co*, the defendant Huron County Road Commission sought to extend an existing drain as well as add a 1,200-foot branch drain. However, the DNR, claiming that the project violated provisions of the WPA, the ILSA, and the now-repealed Michigan Environmental Protection Act, MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.*, brought suit for declaratory and injunctive relief. The trial court granted summary disposition in favor of the defendant commission, holding that the commission's activities fell under exemptions to the permit requirements of both the WPA and the ILSA. *Huron Co, supra* at 512-515.

In affirming the trial court's decision that no permit was required, this Court rejected the DNR's contention that the WPA permit exemption, MCL 281.706(2)(h)(ii); MSA 18.595(56)(2)(h)(ii), limited the words "maintenance, operation, or improvement" to the specifically listed activities of straightening, widening, and deepening. The Court explained:

> [The DNR's] analysis ignores the word "includes." The exception states that no permit is required for a drain's maintenance, operation, or improvement, which *includes* straightening, widening, or deepening. According to *Webster's Third New International Dictionary* (3d ed), the word "include" means "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate." The Legislature's use of the word "includes" in the statute indicates that the words "straightening, widening, and deepening" are examples, but are not the exclusive activities, that constitute maintenance, operation, or improvement of an established drain. [*Huron Co, supra* at 518 (emphasis in original).]

The Court concluded that the drain project at issue constituted maintenance and improvement of an existing drain:

> The project constitutes maintenance because it will allow the [drain] to continue fulfilling its two functions: to drain the surrounding farmland and to provide an outlet to other county drains that empty into it. The project is also an improvement, because it will allow the drain to more effectively alleviate flooding in the area. [*Id.* at 519.]

Using the same analysis it employed for the WPA exemption, the Court also concluded that the project constituted maintenance and improvement for purposes of the ILSA exemption, MCL 281.954(g); MSA 11.475(4)(g). *Huron, supra* at 520. The Supreme

Court, while it did not determine that this Court erred in its *Huron Co* decision, subsequently ordered that "the opinion of the Court of Appeals in this case is to have no precedential force or effect." 451 Mich 909 (1996).

Notwithstanding the unexplained nullification of that decision by the Supreme Court, we believe that the *Huron Co* Court's construction of § 6(2)(h)(ii) of the WPA was a reasonable one, consistent with the plain language of that exemption. However, it appears that neither of the parties in *Huron Co* (nor the parties in this case for that matter) addressed how § 3(d) of the ILSA might affect the construction of the exemption provided in § 4(g) of that act.[4] Reading the ILSA exemption, § 4(g), together with the language contained in § 3(d), we conclude that the Kiesel Drain drainage project requires a permit under the ILSA. Section 3(d) of the ILSA, MCL 281.953(d); MSA 11.475(3)(d), provides:

> Except as provided in this act, a person without a permit from the department shall not:
>
> \*    \*    \*
>
> (d) Create, *enlarge* or diminish an inland lake or stream. [Emphasis added.][5]

The term "enlarge" is not defined in the statute. Therefore, we accord the word its plain and ordinary

---

[4] It is apparent from the record that the trial court did not have the benefit of argument relating to § 3(d) of the ILSA, nor did the parties even mention, much less address, § 3(d) in their appellate briefs.

[5] This language is currently found in MCL 324.30102(d); MSA 13A.30102(d). There is no dispute that the Kiesel Drain is an "inland lake or stream" as defined in the ILSA. See MCL 281.952(f); MSA 11.475(2)(f) (currently MCL 324.30101[e]; MSA 13A.30101[e]).

meaning. MCL 8.3a;  MSA 2.212(1);  *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 469-470; 521 NW2d 831 (1994).  "Reference to a dictionary is appropriate to ascertain what the ordinary meaning of a word is." *Id.* at 470. "Enlarge" is commonly defined as follows: "to make larger; increase in extent, bulk, or quantity; add to . . . to increase the capacity or scope of; expand." *Random House Webster's College Dictionary* (1997), p 434.

Considering the ILSA's express requirement that a permit be obtained in order to "enlarge" a drain, we reject plaintiff's argument that the ILSA exemption for "maintenance and improvement" encompasses the drainage project in this case, which project plaintiff agrees involves the "extension" of existing drains. We are required to give meaning to every word of a statute; no word should be treated as surplusage or rendered nugatory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992).  We believe that the construction advanced by plaintiff, that maintenance and improvement includes extension, would render § 3(d) of the ILSA meaningless.

Plaintiff also cites various portions of the Drain Code, MCL 280.1 *et seq.*;  MSA 11.1001 *et seq.*, as well as numerous decisions interpreting those provisions, in support of its proposed construction. Plaintiff, citing *Sanilac Co Drain Comm'r, supra* at 532, argues that it is appropriate to consider Drain Code provisions when interpreting the WPA and ILSA exemptions because both of those exemptions make reference not to a particular section of the code, but to the entire act. Plaintiff notes that the Drain Code variously includes extension of a drain, among other improvements, as one of the activities that may be

undertaken according to the provisions of the code. See, e.g., MCL 280.191, 280.192, 280.482, 280.535; MSA 11.1191, 11.1192, 11.1482, 11.1535. We think it noteworthy that the Legislature failed to include the term "extension" in the relevant ILSA and WPA exemptions although that term appears in the Drain Code. In any event, we do not believe that resort to the Drain Code in order to construct the ILSA is necessary or appropriate in light of the plain language of MCL 281.953(d); MSA 11.475(3)(d) requiring a permit for a person to "enlarge" an existing drain.

### III. CONCLUSION

Because we have already concluded that plaintiff is required to seek a permit under the ILSA in order to proceed with its proposed extension of the Kiesel Intercounty Drain, we need not reach or address the issue whether a permit is similarly required under the WPA, which, unlike the ILSA, does not contain an express permit requirement for the enlargement of a drain.[6] We likewise do not need to address the DNR's alternative claim that a permit is required under the ILSA because the upper portion of the Kiesel Drain was not legally established or constructed before January 1, 1973. For the reasons stated above, we conclude that the trial court erred in granting summary disposition to plaintiff.

Reversed.

---

[6] We note that activities that require a permit under the ILSA do not appear to require a separate permit under the WPA. MCL 281.706(1); MSA 18.595(56)(1) (currently MCL 324.30305[1]; MSA 13A.30305[1]).